IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WARD, SR. and ELIZABETH SPELLS WARD, h/w, | ) ) | CIVIL DIVISION |
| | ) | No.  2:21-cv-02698-JMY |
| Plaintiffs, | ) | |
| v. | ) ) | |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW, comes the Defendant, Progressive Specialty Insurance Company ("Progressive"), by and through its attorneys, Burns White LLC, and files the following Brief in Support of its Motion for Partial Summary Judgment.

## I.     INTRODUCTION

A genuine dispute over the value of an insured's claim for uninsured motorist ("UM") benefits is not insurance bad faith.  Under Pennsylvania law, an insurer "does not act in bad faith by investigating and litigating legitimate issues of coverage" and "an insurer is not bound to submerge its own interest in order that the insured's interests may be made paramount."  While it is apparent that Plaintiff would have preferred that Progressive pay his claim "on demand, no questions asked," an insurer does not act in bad faith by conducting an investigation before making payment.

In responding to Plaintiff's claim for UM benefits, Progressive assigned an experienced claim professional who timely investigated and evaluated Plaintiff's UM claim and communicated with Plaintiff's counsel.  There was a genuine dispute regarding the value of Plaintiff's UM claim based upon the following factors:

- Plaintiff was subject to his limited tort election;

- Plaintiff had pre-existing conditions in his lumbar and cervical spine;

- Plaintiff's medical treatment consisted primarily of pain management treatment;

- Plaintiff refused to provide MRI films, pre-accident medical records, a statement under oath, or a medical authorization before filing the lawsuit; and

- Plaintiff did not have any lost wages; and

- Plaintiff did not present evidence of recoverable out-of-pocket medical expenses before filing the lawsuit.

Progressive had a reasonable basis to question the value of Plaintiff's UM claim and is entitled to summary judgment on Plaintiff's bad faith claim. Progressive is also entitled to summary judgment because there is not one iota of evidence that Progressive knew of or recklessly disregarded the lack of reasonable basis for its claims handling.

## II.      STATEMENT OF FACTS

Progressive's Concise Statement of Undisputed Material Facts is incorporated herein by reference thereto, as though fully set forth at length.

## III.     STATEMENT OF THE QUESTIONS INVOLVED

Whether Progressive's Motion for Summary Judgment Should Be Granted Because There is No Evidence That Progressive Lacked a Reasonable Basis for its Handling of Plaintiff's Claim?

Suggested Answer: Yes.

Whether Progressive's Motion for Summary Judgment Should Be Granted Because There Is No Evidence That Progressive Knew of or Recklessly Disregarded the Lack of Any Reasonable Basis?

Suggested Answer: Yes.

## IV.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In order to avoid summary judgment, the non-moving party must point to sufficient evidence for a jury to return a verdict in its favor—proffering evidence that is "merely colorable or not sufficiently probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

## V.   ARGUMENT

### A.   To Defeat Progressive's Motion for Summary Judgment, Plaintiff Must Present Clear and Convincing Evidence of a Frivolous or Unfounded Refusal to Pay Plaintiff's Claim.

To prevail on a bad faith claim, a plaintiff must establish that: "(1) the insurer did not have a reasonable basis for denying coverage and (2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." See Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364 (Pa. 2017).  In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim. See Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688-89 (Pa. Super. Ct. 1994).  "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 887 (Pa. Super. Ct. 2000).

A special burden of proof falls on a plaintiff in cases involving a claim brought under the Pennsylvania bad faith statute.  At trial, the insured must prove the elements of the claim by clear and convincing evidence. See Terletsky; O'Donnell v. Allstate Ins. Co., 734 A.2d 901 (Pa. Super. Ct. 1999); MGA Ins. Co. v. Bakos, 699 A.2d 751 (Pa. Super. Ct. 1997).  Under Pennsylvania law,

"[t]he standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Sylvester, 555 A.2d 1202 (Pa. 1989).  At the summary judgment stage, the plaintiff's burden is "commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." Northwestern Mut. Life. Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005); see also Terletsky at 688 (bad faith must be proven, "not merely insinuated.").

UM and UIM claims are similar "to first party claims insofar as the disclosure of policies and coverage terms are concerned. … Beyond those threshold connections and duties, however, and when it turns to issues such as liability, damages, coverage or even procedure, U-claims become very much like third party claims.  Simply stated, they are inherently and unavoidably arms' length and adversarial." Condio v. Erie Ins. Exch., 899 A.2d 1136 (Pa. Super. Ct. 2006); see also Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378, 381 (Pa. Super. Ct. 2002); Zappile v. AMEX Assur. Co., 928 A.2d 252 (Pa. Super. Ct. 2007).

There is no heightened duty imposed upon an insurer in the context of a UM/UIM claim. Id.  Rather, insurers in Pennsylvania are held to a duty of good faith and fair dealing toward their insureds regardless of whether it is a first party or third party claim.  Id.   Because UM and UIM claims contain elements of both first party and third party claims, there is "no reason … to impose a different duty on an insurance company in a UIM setting." Id. at 1144-1145.  Thus, the standard for measuring the conduct of an insurer in its handling of a UIM or UM claim remains "whether the insurance company had a reasonable basis for its position or acted in reckless disregard of the absence of a reasonable basis." Id. (citing Terletsky, 649 A.2d at 688).

4

**B.**     **Progressive is Entitled to Summary Judgment as to Plaintiff's Bad Faith Claim Where There is a Genuine Dispute Over the Value of Plaintiff's UM Claim.**

The Third Circuit Court of Appeals has affirmed summary judgment to an insurer after finding that the insurer acted reasonably in light of the evidence that had been provided. Miezejweski v. Infinity Auto Ins. Co., 609 Fed. App'x. 69, at 72 (3d Cir. 2015).  While there was a genuine dispute regarding the value of plaintiff's claim, the Third Circuit held that a genuine dispute over value is not bad faith under Pennsylvania law, particularly when the insurer conducts further investigation of the claim.  Id.

In Miezejewski, the insurer made a $5,000 offer to settle the insured's UIM claim based upon the initial information which was available to it, but informed the insured's attorney that "anything more than that could require some additional discovery" of medical records and information regarding the insured's wage loss claim.  Id. at 73.  The insured rejected the $5,000 offer and a second offer of $7,500.  Id.  Rather than providing additional information for the insurer's evaluation, the insured sued for breach of contract and bad faith.  Id.  The district court granted summary judgment to the insurer as to the insured's bad faith claim.

The Third Circuit affirmed.  The Third Circuit cited the insurer's representations that the insurer's offer was not final and would be re-evaluated based upon "additional discovery" as evidence of the insurer's "good faith."  Id. at 73.  Where the insurer "acted reasonably in light of the evidence, both presented and inexplicably withheld," the Court found that the facts did not support the insured's bad faith claim at all, "let alone by clear and convincing evidence."  Id.

In Smith v. State Farm Mut. Auto. Ins. Co., , the Third Circuit observed that Pennsylvania law continues to recognize that "a disagreement over the amount of the settlement of [a] UIM

5

claim . . . is not unusual" and that "the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith."  506 F. App'x 133, 137 (3d Cir. 2012).

The decisions of the United States District Court for the Eastern District of Pennsylvania are in accord.  See Murphy v. United Fin. Cas. Co., 2016 WL 1555926 (E.D. Pa. Apr. 18, 2016); Thomer v. Allstate Ins. Co., 790 F.Supp.2d 360 (E.D. Pa. 2011); Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567 (E.D. Pa. 2000); Segall v. Liberty Mut. Ins. Co., 2000 WL 1694026 (E.D. Pa. 2000).

In Murphy, the insurer issued an automobile insurance policy to its insured, which included UIM coverage.  2016 WL 1555926 (E.D. Pa. Apr. 18, 2016).  The insured made a UIM claim in May 2012, in relation to an accident that occurred in October 2011.  The insurer spent the next two years reviewing the insured's medical records and believed some of the insured's complaints to be related to pre-existing conditions.  After some negotiation, the insured's attorney requested that the claims adjuster offer her "full settlement authority" in April 2015.  Id. at *2.  The insurer advised that it had "full authority to resolve [the insured's] UIM claim for $87,000."  Id.  The insured then sued for breach of contract and bad faith.  The breach of contract claim settled for $104,000 soon after suit was filed.

The court granted summary judgment to the insurer.  With regard to the alleged unreasonable delay, the court noted that a long delay between demand and settlement is not, on its own, bad faith.  Id. at *3.  The court noted that while nearly three years lapsed between notice of the UIM claim and the settlement offer, the insurer "took steps to thoroughly investigate [the insured's] claim, and these steps were reasonable given the peculiar circumstances [the insured's] medical conditions presented.  Moreover, [the insured's] failure to attend an IME scheduled in August of 2014 contributed to [the insurer's] delay in making a settlement offer.  We therefore

hold that a reasonable jury could not find that the delay between [the insured's] filing of his claim and [the insurer's] initial settlement offer establishes bad faith." Id.

The court also held that the insurer's allegedly low settlement offers did not amount to bad faith as a matter of law. The insurer's initial offer, "presented after a thorough and reasonable investigation," was at the bottom, but still within, the insurer's estimated range of value. Id. at *4.

In Thomer, the Court granted summary judgment after holding that "offering an amount at the lower estimated settlement range does not qualify as bad faith." 790 F.Supp.2d 360, 376 (E.D. Pa. 2011). The insured argued that the insurer acted in bad faith by its apparent "disregard of a treating physician's diagnoses." Id. at 374. But the Court found that the insurer "had in its possession medical records that discounted the existence of persistent injuries." Id. The court stated that in light of the "unclear nature of Thomer's injuries evidenced by the conflicting medical records," the insurer "had a reasonable basis to question the diagnosis of [plaintiff's] treating physicians." Id. at 375.

In Williams, plaintiff was injured in an automobile accident which rendered him unable to return to work as a police officer. 83 F. Supp. 2d 567 (E.D. Pa. 2000). Plaintiff subsequently asserted a UIM claim against his automobile insurer and demanded the policy limits. When the policy limits were not paid, plaintiff demanded arbitration. Williams at 569. Six days before the arbitration, the insurer made its first offer, in the amount of $500,000. Plaintiff rejected the offer. The insurer increased its offer to $650,000. Plaintiff again rejected the offer. The claim was subsequently arbitrated and the arbitrators awarded $900,000 to plaintiff. Id. at 570. The plaintiff then filed a bad faith lawsuit against the insurer. Id.

The court granted summary judgment to the insurer despite the disparity between the offer and the award. The court refused to find that that there was any evidence of bad faith where the

exact worth of the claim was not clear because a large component of the loss involved pain and suffering, loss of life pleasures and loss of consortium, "all of which reasonable minds could differ in quantifying." Id. at 575.  The court concluded that in light of the uncertainties regarding the "inherently subjective nature of much of the plaintiff's damages, a reasonable jury could not find [the insurer's] lower evaluation of the claim to be clear and convincing evidence of bad faith." Id.

The court granted an insurer's motion for summary judgment for similar reasons in Segall. 2000 WL 1694026 (E.D. Pa. 2000).  There, plaintiff asserted a UIM claim against his automobile insurer.  The insurer set a $250,000 reserve on the claim but did not make an initial settlement offer. Id. at *1.  Five days prior to the arbitration, the insurer made its first settlement offer, in the amount of $50,000. Id.  Plaintiff rejected the offer and proceeded to arbitration.  The arbitrators awarded $187,500 at the arbitration. Id.  Plaintiff sued the insurer for bad faith, asserting that the insurer's settlement offer fell well below the amount the insurer allocated as a reserve for the claim and demonstrated bad faith. Id.  Despite the substantial disparity between the offer and award, the court granted summary judgment to the insurer after finding that the insurer had a reasonable basis for its evaluation of plaintiff's claim.

See also, e.g., DeLuca v. United Fin. Cas. Co., 2021 WL 4306119 (M.D. Pa. Sept. 22, 2021) (finding no bad faith when the insurer had a reasonable basis for its settlement offers); Castillo v. Progressive Ins., 2021 WL 963478 (M.D. Pa. Mar. 15, 2021) (the insurer did not act in bad faith when it conducted a reasonable investigation and made a reasonable settlement offer based on the available information); Bernstein v. Geico Cas. Co., 2020 WL 1308226 (E.D. Pa. Mar. 19, 2020) (the insurer's reasonable investigation consisted of requests for additional medical documentation, repeated communications with the insured's counsel, and updates on the progress of the investigation); Mitchell v. Allstate Ins. Co., 2019 WL 1440043 (E.D. Pa. Mar. 29, 2019) (finding that the insurer had a

reasonable basis for denying benefits); Newhouse v. GEICO Cas. Co., 2018 WL 4953018 (M.D. Pa. Oct. 12, 2018) (finding no bad faith when the insurer had a reasonable basis for its settlement offer); Dougherty v. Allstate Prop. & Cas. Ins. Co., 185 F.Supp.3d 585 (E.D. Pa. 2016) (finding that the insurer had a reasonable basis to deny the insured's claim); Whalen v. State Farm Fire & Cas. Co., 183 F.Supp.3d 672 (E.D. Pa. 2016) (finding no bad faith when there was no clear and convincing evidence that the insurer failed to provide information/conduct a reasonable investigation/explain coverage decisions theory); Rowe v. Nationwide Ins. Co., 6 F.Supp.3d 621 (W.D. Pa. 2014) (finding no bad faith when the insurer demonstrated a reasonable basis for its decision); Schifino v. Geico General Ins. Co., 2013 WL 6533180 (W.D. Pa. Dec. 13, 2013) (absent evidence of motivation of self-interest or ill-will, a mere failure to increase an initial offer will not support a finding of bad faith); Mitch's Auto Service Center Inc. v. State Auto. Mut. Ins. Co., 2011 WL 5042480 (E.D. Pa. 2011) (the insurer did not act in bad faith where there was no evidence that delays were knowing or reckless); Mu'min v. Allstate Property and Cas. Ins. Co., 2011 WL 3664301 (E.D. Pa. 2011) (the insurer had a reasonable basis for denying benefits); Enwereji v. State Farm Fire and Cas. Co., 2011 WL 3240866 (E.D. Pa. 2011) (the insurer thoroughly investigated the claim, communicated with the insured, and made payment); MP III Holdings, Inc. v. The Hartford Cas. Ins. Co., 2011 WL 2604736 (E.D. Pa. 2011) (the insured failed to produce clear and convincing evidence from which a jury could reasonably conclude that the insurer acted recklessly or with ill will); El Bor Corp. v. Fireman's Fund Ins. Co., 787 F.Supp.2d 341 (E.D. Pa. 2011) ("although the insurer was responsible for some of the delay for adjusting Plaintiff's claim ... there was no evidence this delay was knowing or reckless."); Sadel v. Berkshire Life Ins. Co. of America, 2011 WL 292239 (E.D. Pa. 2011) (the insurer conducted a good faith investigation).

Similarly, the Pennsylvania Superior Court has consistently held that a genuine dispute as to the value of a UM or UIM claim cannot establish clear and convincing evidence of bad faith on the part of the insurance carrier, even where it appears that the insurer has undervalued a claim. Brown v. Progressive Ins. Co., 860 A.2d 493 (Pa. Super. Ct. 2004); Zappile v. AmEx, 928 A.2d 251 (Pa. Super. Ct. 2007); Johnson v. Progressive Ins. Co., 987 A.2d 781 (Pa. Super. Ct. 2009).

In Brown, the plaintiff was injured in an accident on January 13, 1996. Id. at 495. The plaintiff's attorney forwarded documentation of his accident-related medical treatment to the plaintiff's insurer in January of 1998, and shortly thereafter, the plaintiff's attorney advised the insurer that he planned to pursue a UIM claim. Id. In September of 1998, the insurer stated in a claim note that, "based upon medicals I have in file, [it] does not appear that claim value would exceed the $50,000 limits [of the tortfeasor]." Id. at 503, n. 11. The insurer valued the claim at $35,000 to $40,000, an amount which was less than the tortfeasor's $50,000 bodily injury limit. Id. at 495. Thus, the insurer did not make an initial offer of settlement. Id.

In October of 1998, the insurer provided its consent for the plaintiff to settle with the tortfeasor. Id. at 496. At the same time, the insurer advised the plaintiff that arbitration would be necessary to settle the UIM claim "due to the divergent opinions as to the value of the underlying claim," which the plaintiff's attorney believed it to be $60,000 to $75,000. Id. Ultimately, the plaintiff's UIM claim settled on the eve of arbitration in September 1999. Id.

With the UIM claim resolved, the plaintiff initiated a bad faith action against the insurer. At the trial court level, the court found that the insurer acted in bad faith for several reasons, including failure to properly evaluate the true value of the plaintiff's claim. Id. at 502. On appeal, the Pennsylvania Superior Court reversed, concluding that the trial court's findings as to the insurer's valuation of the UIM claim were either unsupported by the record or did not rise to the

10

level of bad faith.  The Superior Court found it significant that the insurer and the plaintiff's

counsel ultimately agreed to settle the case for $25,000, which suggested a total claim value of

$75,000, given the $50,000 in underlying coverage.  Id. at 503.  The Superior Court ruled that the

plaintiff failed to identify any evidence in the record to suggest that the plaintiff's claim was worth

more than $75,000, and the record as a whole supported the conclusion that $75,000 was the

highest of either party's valuation.  Id.

The Superior Court concluded that the insurer "adequately evaluated the claim, and

believed that the total value was worth around $35,000 to $40,000," and found that the insurer

"reasonably believed that it would owe nothing, because it was entitled to a $50,000 credit from

Nationwide."  Id. at 503.  Because Pennsylvania courts "have not recognized bad faith where the

insurer makes a low, but reasonable estimate of the insured's losses" and because the record

reflected that the insurer took a reasonable position on valuation issues, the Superior Court in

Brown ruled that the plaintiff failed to establish clear and convincing evidence of bad faith conduct

and the Superior Court vacated the judgment.  Id. at 501.

In Zappile, plaintiff asserted a UIM claim against his insurer and demanded the policy

limits of $150,000.  ZappilleU, 928 A.2d at 254.  The insurer offered $32,000, and negotiations

subsequently failed.  The claim was arbitrated two years later, and the arbitrators awarded plaintiffs

$105,000.  The plaintiffs filed a lawsuit against the insurer, alleging that the insurer acted in bad

faith by undervaluing the claim and forcing arbitration.  Id. at 255.  After a bench trial, the trial

court found that the insurer had acted in bad faith.  Id.

The Superior Court reversed, noting that the mere fact that the insurer offered less than the

ultimate award is not itself evidence of bad faith. The Superior Court found that the:

> defense valued the case based on opinions by counsel and their own
> evaluation of the injuries sustained, which was heavily weighted

> toward a lower amount due to the successful outcome of the corrective surgery and the apparently limited physical impact the injury had on Zappile.  We cannot help but notice that in some ways this is unfair… [Zappile] was obviously not milking his injury.  He did not overtreat, did not miss much time from work, and did not make outlandish claims of how his life was adversely affected by the accident.  As at least a partial result of his honesty, the insurer undervalued his claim.  However, this does not represent clear and convincing proof that the insurer undervalued the claim out of some ill will or that its actions had no reasonable basis.

Id. at 261.

The Superior Court concluded that "[w]hile it is apparent that [the insurer] undervalued the claim, it is not apparent that it did so out of ill will or without reasonable basis."  Id.  Accordingly, the Superior Court held that there was no clear and convincing evidence that the insurer acted in bad faith.  Id.

In Johnson, the plaintiff was awarded $75,000 at arbitration.  Johnson, 987 A.2d, at 783. Thereafter, the plaintiff filed a bad faith action against Progressive in the Court of Common Pleas of Philadelphia County.  Id.  The trial court granted summary judgment in favor of the insurer concluding that there was "no genuine issue of material fact that [Progressive] had not exhibited bad faith in processing [the plaintiff's] UIM claim."  Id.  On appeal, the Superior Court concluded that the dispute centered upon the measure of damages.  Id. at 785.  The Superior Court found that the insurer had a reasonable basis for the value placed on the plaintiff's damages and made "a more than reasonable estimate of the damages" by offering the plaintiff $30,000.  Id.

Acknowledging that the insurer's offer was lower than the eventual arbitration award, the Superior Court reiterated that bad faith is not present when an insurer makes a low but reasonable estimate of a plaintiff's damages.  Id.  Rather, the Superior Court concluded that the arbitration award was higher than the offer, lower than the demand, and represented a "middle ground"

between the offer and the demand.  Id.  Finding that there was no question that the insurer handled

the claim promptly and professionally, the Superior Court concluded:

> The underlying facts involve nothing more than a normal dispute
> between an insured and an insurer over the value of a UIM claim.
> The scenario under consideration occurs routinely in the processing
> of an insurance claim.  To permit this action to proceed under these
> facts would invite a floodgate of litigation any time an arbitration's
> award is more than an insurer's offer to settle, even though the award
> is substantially below the insured's demand.  Any finding that the
> insurer operated in bad faith is unfounded.

Id.

As the Superior Court noted in Johnson, disputes "centered upon the measure of damages"

occur "routinely in the processing of an insurance claim."  Here, there was and still is a dispute

regarding the value of Plaintiff's claim based upon the following factors:

- Plaintiff was subject to his limited tort election;

- Plaintiff had pre-existing conditions in his lumbar and cervical
  spine;

- Plaintiff's medical treatment consisted primarily of pain
  management treatment;

- Plaintiff refused to provide MRI films, pre-accident medical
  records, a statement under oath, or a medical authorization before
  filing the lawsuit; and

- Plaintiff did not have any lost wages; and

- Plaintiff did not present evidence of recoverable out-of-pocket
  medical expenses before filing the lawsuit.

As the courts consistently held in Murphy, Thomer, Williams, Segall, Brown, Zappille,

and Johnson, a genuine dispute over the value of Plaintiff's UM claim does not rise to the level of

bad faith.  Here, the evidence shows that Progressive promptly opened a UM claim upon Plaintiff

counsel's request, and assigned the claim to an experienced claims representative who diligently

13

investigated Plaintiff's claim.   Within ten days of receiving Plaintiff's time-limit demand, Progressive evaluated Plaintiff's claim by reviewing all of the information available to it, and attempted to settle Plaintiff's claim in good faith.   Moreover, Progressive identified additional information it needed to continue its evaluation, and requested same from Plaintiff's counsel. Despite repeated requests for the additional items it had identified and requested, Progressive was never provided with this information before Plaintiff filed the instant lawsuit.   Where Progressive "acted reasonably in light of the evidence," the facts do not support the insured's bad faith claim, "let alone by clear and convincing evidence."   Accordingly, Progressive is entitled to summary judgment as to Plaintiff's claim for insurance bad faith.

## IV.   CONCLUSION

For the reasons set forth above, Progressive respectfully requests that this Court enter summary judgment as to Plaintiff's claim for insurance bad faith.

Respectfully submitted,

BURNS WHITE  LLC

By: /s/  Daniel J. Twilla
    Daniel J. Twilla (PA I.D. 93797)
    E-mail: djtwilla@burnswhite.com
    Daniel Inadomi (PA I.D. 312984)
    E-mail:  dwinadomi@burnswhite.com
    Burns White Center
    48 26th Street
    Pittsburgh, PA  15222
    (412) 995-3286 – Direct
    (412) 995-3300 – Fax
    *Attorneys for Defendant,*
    *Progressive Specialty Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the within **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed via the Electronic Filing System. Parties may access this filing through the ECF filing system.


/s/     Daniel J. Twilla
Daniel J. Twilla